Good morning, 18-1486, Prison Legal News v. Federal Bureau of Prisons. Good morning, Your Honors, and may it please the Court. My name is Matthew Schepanka, and I represent the appellant, Prison Legal News. I'm here with my colleague at counsel table, Peter Swanson, who's with me on the brief and admitted in this Court. I'd like to reserve, if time will permit, three minutes for rebuttal. Your Honors, this case falls squarely within the voluntary cessation exception to the mootness doctrine. The say-so of the sitting warden at the Administrative Maximum Facility in Florence, Colorado, that my client's magazines will not be censored on the basis that they mention the name of a Bureau of Prisons staff member or Bureau of Prisons prisoner, does not, cannot overcome the Bureau's heavy burden of demonstrating that their unconstitutional censorship cannot be reasonably expected to recur. This case cries out for this Court's judicial resolution because this has happened before. Prison Legal News has been censored at the ADX in the past and has sued the BOP only to have the case mooted by a policy change, only to have five years later the censorship of our magazines return, and this Court should not allow the BOP to continue its pattern of unlawful censorship and shield all of its rejection decisions from judicial review. No facts have changed in this case since the district court found at the motion to dismiss stage that this case was not moot and that the voluntary cessation exception applied. The BOP- Except facts were introduced subsequent to that because it was done at the summary judgment stage, right? Well, Your Honor, at summary judgment, the Bureau of Prisons argued that a change in policy moots the case. But PLN takes the position that the change in policy would not actually change the outcome. In fact, the abolition of the so-called name-only policy that was adopted in December 2017 is entirely beside the point. Our constitutional challenge is that BOP has the burden of showing whether or not each of the 11 issues or the content of each of the 11 issues of magazines that were censored over the period in question posed a security risk under the relevant federal regulations, and not whether or not- Haven't they essentially conceded that by delivering all 11 of the issues? Well, they delivered the issues, Your Honor, but this is a voluntary cessation case. And so our argument is that while they may have delivered the issues, that was done entirely to moot the case and to avoid judicial determination on the merits. Well, they didn't just deliver the issues. They also have the warden's declaration. Well, the warden's declaration is- the warden's declaration is the sort of evidence that the voluntary cessation exception exists to overcome, Your Honor. The warden's declaration applies only to this warden. The warden has the authority to issue policies that apply to the ADX, but he can't bind future wardens who have their- Well, we didn't think that mattered in the Brown case, that future district attorneys could change a policy. So why should we be different here? Well, Your Honor, I would list a few distinctions between this case and Brown. First, in Brown, it was the chief law enforcement officer of both the state and the county that changed the policy. And the policy- And the county. And the county. The county, but- The attorney general had already- Had already- Said that. Well, and the county essentially adopted the attorney general's written policy in Brown, which was to list specific instances in which the county would not prosecute instances of bigamy. They specifically said if- No, no. They gave specific instances where they might, not where they wouldn't. In other words, you're arguing in your brief that the warden's declaration was different from the district attorney's because the warden still has discretion to review incoming publications, but the district attorney still had discretion to charge bigamy if certain conditions were met, such as the commission of fraud. So what is materially different between the declaration of the warden and the declaration of the district attorney? Well, first, the warden's declaration relies on, in part, on the abolition of the name-only policy, which, as we submit, is not the basis that formed, did not form the basis of any of the rejections. But it goes beyond that considerably, doesn't it? Well, the warden says that the 11 issues would not be, present tense, rejected under the substantive reason why. If the warden retains discretion to look to any security risks that may be posed by a publication, the change in policy in December 2017 doesn't speak to that. Yes, it does, because he has to give a reason this time, and there's a process, and there's a limited time period in your right to appeal, and you know the reason. That's totally different from what it was before. Well, not entirely, Your Honor. Before, there was a rule that they had to conduct individualized, particularized reviews of each issue. They also had to provide notice to the publisher. Those rules haven't changed. They've just been, essentially, listed in the policy. They didn't have to provide a reason before, though, did they? Well, they did have to provide a reason for the rejection, but they were typically, they did. They did have to previously provide a reason. The policy now requires a specific citation of page numbers or language, as well as the Code of Federal Regulations citations, which, in the vast majority of the rejections challenged, those elements were met, but they didn't provide PLN with notice as to why the issue posed a security risk, which is the crux of the argument. Well, counsel, I'm looking at some of these rejection letters. Here's one from October 21, 2013. The publication has been rejected because the referenced pages contain the names of former Bureau of Prisons staff members that have been sentenced. So if you're saying that they didn't give any reason, it seems like that's a reason, isn't it? It says names of staff. That's why they rejected it. Now, you may disagree with the reason, but there is a reason. Well, certainly, Your Honor, but in terms of- What is your argument about these rejections? The argument is that the rejections must be supported by, must be rationally related to, this is the Turner test, has to be rationally related to legitimate penological interest. That's to say that BOP has to provide evidence that that particular issue posed a security risk at the prison. What we're asking this court to do is to allow us to go back to the district court and to present evidence that the names contained in those issues would not have posed a security risk at the ADX. The warden submitted a declaration saying that the prior censorship would not be permitted under the new rule, and that he would not censor publications like that in the future. So are you saying he's a liar, or that he can't bind somebody else who would have a different view? What's your reason for saying there's a possibility of recurrence? Sure. Well, Your Honor, this warden would be subject to penalty of perjury should he reject this content again. So you're not claiming he's lying when he says what he's saying, that he sincerely believes what he's saying? You're not challenging that? I'm not challenging the warden's truthfulness, no. So what is the possibility of this happening again? Where do you find that possibility? Well, that the wardens change. ADX wardens have a high degree of turnover. At least three wardens have held office during the pendency of this case. And if you add the wardens and associate wardens who signed the rejection notices that issue in this case, we're up to another four. So that's seven wardens in less than 10 years. And there's a high degree of turnover. And each of them takes a different, or has the authority to take a different view, both of these individuals. And why is that different from Brown with the new DA, new prosecutor? Well, I would argue that the difference in Brown is that the DA was an elected official. And he has a much stronger incentive to actually follow the published, written public policies that he issues from both a legal and political perspective. But I would say here, he's also the ultimate arbiter of prosecutorial discretion in the Brown case, and gets to decide whether or not the Browns would have been charged had they returned to the county. Here, the Bureau of Prisons Regulations, the Code of Federal Regulations 28 CFR 540.71B, are issued by the Department of Justice and the Bureau of Prisons, and cannot be changed by the warden. So the standard by which every warden and every staff member at the BOP are to review publications is set by federal regulation that this warden has no authority to change. So essentially, the policy change that he issued in both the declaration and the December 2017 policy doesn't speak to the underlying standard of whether or not these issues posed a security risk at the time they were rejected. They only speak to whether this warden will, looking forward, view these issues as a security risk. And what sort of authority do you have for saying that something can be repeated simply because there can be a change in the official who is the ultimate decision maker? Do you have cases like that? As I stand here, I have no cases like that, Your Honor. This would seem to be an issue of first impression, at least in terms of affirmatively deciding that. But in terms of distinctions between other cases, like Brown, where the promise of the official has been held to be sufficient, I would say that this case is dramatically different. To what extent do we defer to the district court in determining that this is unlikely to occur again? Well, I think, Your Honor, the district court seems to have played both sides of this particular question. I think the district court, the ADX, both, the ADX, that motion to dismiss stage, committed to the same policy, whether or not it was in the written 2017 document or not. The witnesses and the declarations... But the district court, once the district court got an affidavit or declaration, the district court was satisfied. And isn't the district court in a better position than we are to determine whether this is likely to happen again? Well, I think, Your Honor, that the district court cited the voluntary cessation standards but did not really grapple with that at the motion for summary judgment stage. And I think the district court could have acknowledged that the warden's change, the warden's declaration says that he is satisfied that these issues can be delivered and that the policy is consistent with sound correctional judgment. But the next warden could come along and say it's not. Well, what would an injunction, you're seeking declaratory injunctive relief, what would an injunction look like that would change the situation now? Would it just be a matter of putting the language in the warden's declaration into an injunction that the court adopts? Is that what you're looking for? I mean, what difference is it going to make? Certainly, that would be part of it, Your Honor, to ensure that the warden's declaration is enforceable against future wardens. But also, certain other injunctions could be valuable here. For example, in pre-suit negotiations, which are part of the record, the warden at the time of the communications with counsel said, we would like to make sure that in the future that articles that are available or articles or content that are available in the electronic law library are not censored because that information is available already to prisoners. And so a commitment or an order of the court requiring BOP to look into issues like that, whether the content that they plan to censor as applied to PLN is not otherwise available in the prison. Certainly, we also have claims for redaction. Under Supreme Court precedent, the BOP is certainly allowed to reject an entire magazine based on very small pieces of objectionable content. But at the same time, they don't have to. And certainly, this court's decision in Shabazz says that the BOP has to put forward evidence as to the rational basis for not redacting prisons. So we have an injunction requiring BOP to both explore redaction as an option or to present or an order requiring them to present evidence in the district court as to the burdens of redaction are also live issues. From the amicus brief, I would infer that you wouldn't be here arguing mootness if Buchanan had been decided otherwise. Is this really just a matter of getting attorney fees? I'm sympathetic to you. It seems to me like you got a victory. And I can see why you feel you should be reimbursed. But should we really be changing mootness law to overcome any disagreement with Buchanan? I would say, Your Honor, that's not PLN's position. The PLN's position is that we would like to see the Bureau of Prisons take seriously its obligation under the First Amendment to review articles for their sensitivity or their threat to the security of the prison and to not infringe on our right to deliver our magazine to subscribers. They haven't rejected any for four years? They have not rejected any since the penancy of this lawsuit. And that goes to the course of the voluntary cessation argument. The concern is that as soon as this lawsuit is over and there's been no enforceable order of the court, that they can certainly change their position as to both the policy and its application to these particular issues. Thank you, counsel. Thank you. My time has expired. May it please the court, Bishop Grewell, on behalf of the United States, I want to talk about the mootness first briefly, and then I'll talk about the voluntary cessation. The reason this case is moot is because they've gotten all the relief that they requested. They narrowed the relief they requested when they made it an as-applied claim. And so if this court were to send it back to the district court, there's no more relief that the district court could grant them. In the complaint, they asked for declaratory relief. The declaratory relief that they asked for, and this is Joint Appendix 13 and 27, is that BOP's actions here violated the law. This court said in Jordan versus Sosa and other places that a declaratory relief requires something more than simply a retrospective opinion that the plaintiff was harmed. A case is not live if that's all you're looking for. The injunctive relief that they requested was that we deliver these issues and that we deliver future ones absent legitimate penological interest. We delivered the issues here. As far as future ones, when they narrowed it to an as-applied claim, future ones are not going to fall under the as-applied claim here. They're necessarily going to be different. They're going to involve different facts, and so they're not part of that as-applied claim. Moreover, courts don't typically give injunctions that simply say follow the law. And an injunction that said deliver future issues absent a legitimate penological interest would be simply saying follow the law. It wouldn't provide a clear boundary for contempt or not. We'd have to have a whole fight about whether or not a legitimate penological interest was involved or not. And so that sort of dispute simply wouldn't be right. That's why the case here is moot. I want to turn to the voluntary assistant. Could I? Yes. I don't know whether this question is going to relate to what you just said or what you're about to say, but I'm going to ask it anyway. Did the Bureau of Prisons reject the 11 publications based on the name only or the name alone policy? So it would appear after looking at the discovery that they did not. Initially, it looks like there were some who thought they were because there are basically sort of, there's a hierarchy, right? And the folks who are looking at these things initially, it seems they had a practice of checking something if there was a name. And so they then send it up. But then the wardens who testified later said that they were not rejecting things based on name alone. Do we need to know the basis on which the publications were rejected to evaluate the mootness voluntary cessation issue? So I don't believe you need to for either. For the mootness, it's again because they got what they wanted. They got them delivered. It doesn't really matter why they got them delivered. Under voluntary cessation, again, it wouldn't matter because in Brown, this court said, so the Browns actually challenged, you know, the prosecutor won't admit that this was unconstitutional and that he couldn't do this. And this court said it doesn't matter. The fact that he's promised that going forward, he would go ahead and continue not to enforce that law is enough. You don't have to have some agreement that the past conduct was improper. You know, I was a little confused, though, a couple of the issues. In fact, November 2011, June 2012 were rejected because the letter said this, that they contained information on inmates who cooperated with BOP investigations. I can see why the BOP would be concerned about that. But now the warden's saying that those issues should not have been rejected. And that's a bit puzzling. So the reason that I think is in the record and is best explained by Warden Fox, which is the one who came on right before Warden Matavosian. I assume Warden Matavosian had the same reasoning. This is, I think, in one of his depositions, Joint Appendix 2343 to 45 and 2349. He explains that his view differed from the prior warden's. And what he saw as different was that this was information that the inmates already had or that they would be able to get. And so it was for that reason that he thought it should be let in. And that's why it didn't. But doesn't that play into the argument, though, that different wardens really are going to look at this in different ways? And so, although we have the warden's declaration, that's what this warden thinks. But these wardens move around, and who knows what the next one's going to be. So I think there are two responses to that. First is the legal one. And I think Brown clearly said it doesn't matter that the DA is going to change. And I think the reason was he said, yeah, of course. And that's going to be the case any time you have a government official. There's always going to be a new government official. And so to read to the contrary would be that the voluntary cessation doctrine is always going to apply. The government will never be able to move any case because there's going to be a new official or even rules and statutes could eventually be changed. But I think Brown clearly answered that part of it. I think there's also a factual thing. If you look at the record, this was in, I believe, a deposition from Mr. Collins. He also explains that there's not really a reason to think that the warden's going to change his view. And part of that is the litigation. And part of that is also that the wardens are going to follow the advice of the folks who are around them, and the folks who have had this long experience are going to recognize that this litigation occurred and that you shouldn't be going back on that policy. To the point they made, that might also raise a question then about the 2003 litigation that came up beforehand. They got what they asked for in the 2003 litigation. What we had in place at that time was a policy that was a mandatory exclusion on the names alone. So it said, if there's a names alone, you have to get prior approval or it's going to be excluded. And you can find that if you look at 367, 377, and 385 of the Joint Appendix. And so we got rid of that policy. And then you're in a sort of, well, you don't have to exclude it for that reason, but it could be something that you would consider. And so that's different. They got what they wanted. Now we're in this sort of limbo state of, are you going to consider names alone or not? And so then when this litigation came about, and it does appear that it's not just names alone that was deciding it. But then we said, now we have the new policy. You can't consider names alone at all. So it went from a must to a may to a shall not. So they've gotten everything that they wanted along the way. Except for one thing. Why isn't the all or nothing policy still a live issue? They're saying that whenever one of these publications gets rejected, it's just, that's it. It's, you toss it root and branch. But if the problem is just a single sentence in a long article, why can't that be redacted? Now there may be a merits response to that. But why shouldn't they get a chance to litigate that issue? Because that's one of the claims that they made. Right. So joint appendix 1483, they note that the redaction claims are also as applied claims. And since we've given, since we never, since they've gotten the magazines, there's nothing to redact. Well, then let's put it in the voluntary cessation context though. I mean, do they have any assurance that they've been heard and that they're concerned about wholesale rejection? Why shouldn't that be litigated? Because it's not ripe. If we're going to have a claim about redactions and what should be redacted, we need, first of all, we need to have something that we're excluding so we can explain why we think it should be redacted or shouldn't be redacted. Well, why wouldn't that be something they could say, look, we have 11 examples here and the BOP tossed every one of them. And why wouldn't that happen again? It happened 11 times. Why wouldn't it happen a 12th time when they finally do decide that there's a problem in one of these publications? But that goes back to, if it's going to happen again, which is the speculative nature of it? Well, the Bureau of Prisons hasn't said that they're never going to reject a publication again, have they? No, we haven't said that. Okay, and if they do reject a publication, their track record is they reject the whole thing. Right, and at that point it'll be ripe and we'll have facts that we can actually talk about whether it should be redacted, why it should be redacted, based on the information and the reason we're excluding it. We can't talk about it in just an abstract sense. That's more of a facial challenge, which they've said they're not raising. Because we're going to be getting facial rules based on hypothetical facts that we don't have. Well, we have 11 examples. Where the Bureau of Prisons has said those should not have been excluded. There's nothing that should be redacted from them. And so if you send it back, the Bureau of Prisons, the courts can be like, okay, well, what should you redact your Bureau of Prisons? And we're going to say there's nothing that should be redacted. We think the warden's view is that these should have all been given to the prisoners. None of that information should have been redacted. So we need an actual claim where there should be a redaction. If in the future, they get another rejection, and they bring it forward, and they think that there's no legitimate penological interest, at that point, if we were to simply deliver... Have they conceded that all their claims are as applied, or have they challenged the policy? They said that their challenge is as applied in numerous places, and they certainly said the redaction claim is as applied. Again, that's Joint Appendix 1483. They say our redaction claim is an as applied claim. As far as voluntary secession, generally, they have to have two clear showings. The first clear showing is reluctant submission. The second clear showing is that there's a desire of the government or the party to go back to the old ways. They don't have that here. You look at the trainings that we did. You look at the fact that we brought the attorneys in to do the review. You look at the fact that the warden made this statement under penalty of perjury. You look at the fact that there's been significant reductions in the amount of rejections, not just for PLN, we haven't rejected one of theirs since 2014, but reductions amongst other magazines have also gone down with these new policies going into place. And yes, they had their pre-litigation letters, but this court also has recognized in Brown that it's perfectly reasonable that when you're dealing with a government actor, that this litigation might be what spurs them to make this change, and that we have a presumption of good faith with government actors because they have different incentives than private parties. So we look at the voluntary cessation doctrine a bit differently when you're looking at them. Moreover, I think the 2003 litigation actually helps us here as well. Because again, as I pointed out, if you look at it, they got what they asked for there. They got us to get rid of that mandatory policy, and we did. We got that back. And so now that they've asked for something else, there's no reason to think that our giving it to them here is a sham, or that we're going to go back on that. One point of clarification, the relief that we asked for is a dismissal of the appeal here. I think that actually the proper relief is an affirmance of the district court's dismissal below. That would be Sac and Fox Nation of Oklahoma versus Cuomo, 193 F3rd 1162 at 1168. Also the South Utah Wilderness case, 707 F3rd 1143 at 1147. And the Rooker case from Rooker-Feldman of the Supreme Court did the same thing there. Unless the court has, yes. What injunctive relief did they seek with respect to redaction, or did they? I don't think in their complaint that there is a list of a requested injunctive relief there. So if we said it wasn't moot because of the possibility of changing their mind in the future, what could be litigated now with respect to redaction? I don't know what there could be litigated. I don't know what. Normally when we talk about there being a possible future change, it's you don't need injunctive relief because they promised they won't do it again. And the court may be skeptical of that and issue an injunction anyway. But here if they weren't seeking injunctive relief, I'm trying to see how if we found it was not moot because of the possibility that they'll continue to censor the entire issue instead of redacting. Then I don't see, I'm trying to think of what would happen on remand. Sure. So one, I don't think they asked for it in their complaint. But even if they did, they gave that up when they said this is an as-applied claim. Challenging the all-or-nothing policy, that's a facial challenge. And it's one that's also not ripe as an as-applied challenge because we don't have facts about this is what needs to be redacted. So I think they gave up that claim when they removed it from being facial to as-applied, even if they had that in their complaint.